HARSHMAN and Another *v.* PAXSON.

Suit by *A.* against *B.* and *C.* The complaint alleged, that *B.*, conspiring with *C.* to defraud the plaintiff, executed to him a written assurance and inducement, as follows, viz., " If you will let *C.* have them horses, I will go his bail for the making of the deed, whenever the letter comes with the numbers and range in ; if he does not, I will pay you two hundred dollars for your horses ;" that the plaintiff was thereby induced to deliver to, *C.*, who was insolvent, two horses, worth one hundred dollars each ; that confiding in the honesty of said *B.* and *C.*, plaintiff expected that they would, on the faith and obligation of said written instrument, pay to him the full value of said horses ; that before that time, *C.* had represented to one *D.*, that he was the owner of an undivided interest in two certain tracts of land, which he would sell and convey to said *D.*, if he would procure from plaintiff, and deliver to him, said *C.*, the two horses above named, to which proposal *D.* assented ; that afterward, and before the execution by *B.* of the instrument above recited, both *B.* and *C.* well knew that *C.* had no interest in one of said tracts of land, yet intending to cheat and defraud plaintiff, they concealed such knowledge from him, and induced him to deliver said horses to *C.*

*Held*, that viewing the complaint as counting upon the written contract of *B.*, it was bad ; since it was immaterial whether *C.* had title to the lands at the time that instrument was made, or not, so that he had title at the time the deed was to be made.

*Held*, also, that the complaint was bad, viewed as counting upon the alleged tort : 1. Because a general averment of fraud amounts to nothing. 2. Because it is not shown that the plaintiff was a party to the arrangement between *C.* and *D.*, or was even cognizant, at the time he delivered the horses, of the representations made by *C.* 3. Because the complaint shows that the plaintiff relied upon the written guaranty of *B.*, and not upon *C.'s* title to the land.

APPEAL from the *Clinton* Common Pleas.

WORDEN, J.—Complaint as follows, viz., *Ezeriah Paxson* complains of *Enos Harshman* and *David Mason*, and says, that heretofore, to wit, on *November* 20, A. D., 1854, the said *Enos Harshman*, conspiring with said *David Mason* to cheat and defraud the plaintiff, did execute and deliver to the plaintiff, by the hand of said *Mason*, a written representation, assurance, and inducement, (a copy of which is filed,) whereby, intending to deceive and defraud the plaintiff, the said defendants caused and induced plaintiff to deliver to said

*Mason,* a worthless and insolvent person, one dark brown mare, and one bay mare, each of the value of $100, and of the collective value of $200; and upon the faith and credit of said written instrument, and confiding in the honesty and rectitude of defendants, said plaintiff having delivered, as aforesaid, the said mares to the said *Mason,* confidently trusted and expected that he, the said *Mason,* or *Harshman,* on his behalf, would, on the faith and obligation of said written instrument, pay to plaintiff the full value thereof, or secure the same to be paid. And the plaintiff avers that the deception and fraud of the defendants consists, in part, in this: that theretofore the said *Mason* had represented to one *Aaron Paxson,* that he was the owner in fee simple of valuable, undivided interests in two certain tracts of land, in *Jay* county, in said State; which he proposed to sell and convey to said *Aaron Paxson,* in consideration that said *Aaron* would procure from plaintiff, and deliver to him therefor, the two mares above described, to which proposal said *Aaron* verbally agreed. But afterward, and before the execution of the aforesaid instrument, defendants were fully informed, and well knew, that said *Mason* was not the owner, or entitled, of any interests in more than one tract of land in *Jay* county, and that he could not make conveyance of any such to said *Aaron Paxson.* Yet notwithstanding being so informed, the said defendants, intending to defraud and deceive plaintiff, withheld from him their knowledge of *Mason's* want of title, and induced him, (plaintiff,) to deliver to said *Mason* the above described mares, by the means above set forth. And plaintiff further says, that the said defendants, nor either of them, have paid to said plaintiff the value of his said property, though often requested," &c.

The written instrument mentioned is as follows, viz.,

"*November* the 20th, 1854.

" Mr. E. PAXSON, Sir:

"If you will let *David Mason* have them horses, I will go his bail for the making of the deed, whenever the letter comes with the numbers and range in; if he does not, I will pay you two hundred dollars for your horses. I am going to trade

May Term, him a good mare for the filly, on trial, a mare worth one
1861. hundred and ten dollars.

HARSHMAN (Signed,) "ENOS HARSHMAN."
v.
PAXSON. A demurrer to this complaint was overruled, and the defendants excepted. Such further proceedings were had, as that final judgment was rendered for the plaintiff.

The record presents no question but the one arising upon the ruling on the demurrer to the complaint.

By the complaint, we suppose it was intended to set forth a cause of action arising *ex delicto*, and not *ex contractu*. It is clear, that no cause of action is shown against the defendants arising upon the contract set out. By the contract set out, *Harshman* became "bail" for *Mason* for the making of the deed, upon the happening of the event named; and on *Mason's* failure to make the deed, as provided for, *Harshman* bound himself to pay the plaintiff $200 for the horses. In order to hold *Harshman* liable on this contract, it must be shown that *Mason* refused or neglected to make the deed, upon the coming of the letter named in the instrument. Perhaps the instrument should be construed to mean that such letter was expected, and would be forthcoming in a reasonable time. Viewing the complaint as sounding in contract, it is immaterial whether *Mason* was the owner of an interest in both, or neither, of the pieces of land mentioned, at the time the instrument was made, and the horses delivered. If he had the title at the time the deed was to be made, that would be sufficient. *Carver* v. *Fennimore*, 8 Ind. 135, and authorities there cited. There is no liability shown as against *Harshman* upon the contract, and still less, if possible, is there such liability shown against him and *Mason* jointly.

But as before observed, we suppose the alleged *tort* is the gist of the action. In this view also, the complaint, as we think, is bad. The general charge of fraud amounts to nothing. It is the office of pleadings under the code, to set forth facts, and not mere conclusions. We must look to the specific acts of fraud which are charged in the complaint, and those only. The fraudulent acts charged amount to this, only: that *Mason* represented to one *Aaron Paxson*, that he owned

an interest in certain pieces of land, and agreed to sell him the land, if the latter would procure for him the horses in question, to which proposition the latter agreed. That afterward, both *Mason* and *Harshman* discovered that *Mason* had no interest in one of the pieces, and fraudulently concealed this knowledge from the plaintiff, at the time the horses were delivered. Now, taking it for granted, without inquiry, that the land which *Mason* agreed to sell to *Aaron Paxson*, was the same as that for which a deed was to be made as specified in the written instrument, still it is not shown that the plaintiff was in any way a party to the arrangement between *Mason* and *Aaron Paxson*, or was even cognizant, at the time the mares were delivered, of the representation made by *Mason* to the latter, that he had title to both pieces. This representation, for aught that appears, was made in good faith, for it is alleged that the defendants were afterward informed that *Mason* had not title to both pieces. So far, no fraud is shown. Neither of the defendants is charged with having made any representations to the plaintiff, in reference to *Mason's* title. The case amounts, then, to about this: *Mason* was to convey certain land at a future day, to a part of which he had no title, and *Harshman* was to see that this was done, or pay the $200. We have already seen that this was a valid contract. If, when the time arrived for making the deed, *Mason* had no title, unless it was the intention of the parties that *Mason* should make a quit-claim of whatever interest he might have in the land, of course the plaintiff would not be bound to accept the deed, but might hold *Harshman* liable on his guaranty. But the fact that *Mason* had, at the time the mares were delivered, no title to a part of the land, does not authorize the plaintiff to convert the contract into a *tort*, and recover, in money, the value of the mares, when by the contract he was to take it in land. But there is another fatal defect in the complaint, viewed as counting upon the alleged *tort*. The plaintiff utterly disclaims having relied upon *Mason's* title to the land. The mares are alleged to have been delivered "upon the faith and credit of said written instrument;" and it is alleged, that the plaintiff "confidently trusted and expected that the said

May Term,
1861.

*Mason*, or *Harshman* on his behalf, would, on the faith and obligation of said written instrument, pay the plaintiff the full value" of the mares, or secure the same to be paid.

It is evident, from the allegations in the complaint, that the plaintiff relied upon the security he had by the guaranty of *Harshman*, and not upon any confidence he had in *Mason's* title to the land.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded, &c.

*J. N. Sims* and *J. F. Suit*, for the appellants.

*R. P. Davidson*, for the appellee.